UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAWSHON FITZGERALD,<br><br>          Petitioner,<br><br>          v.<br><br>CHARLES WARREN, et al.,<br><br>          Respondents. | Civil Action No. 13-1162 (JBS)<br><br>**OPINION** |

**APPEARANCES:**

        DAWSHON FITZGERALD, 155303C
        New Jersey State Prison
        P.O. Box 861
        Trenton, New Jersey 08625
                *Petitioner Pro Se*

        UNION COUNTY PROSECUTOR
                by:  Sara Beth Liebman, Esq.
        32 Rahway Avenue
        Elizabeth, New Jersey 07202
                *Attorneys for Respondents*


**SIMANDLE, Chief Judge**[1]

        Dawshon Fitzgerald ("Dawshon") filed a Petition for a Writ

of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment

of conviction filed in the Superior Court of New Jersey, Law

Division, Union County, on April 22, 2005, and amended on

---

[1] This case was reassigned to the undersigned following the death
of the Hon. Dickinson R. Debevoise in August, 2015.

November 25, 2008, after a jury found him[2] guilty of being a kingpin of a narcotics trafficking network, conspiracy to distribute heroin and cocaine, operating a drug production facility and 18 related charges.  The State filed an Answer with the record and Dawshon filed a Reply.  After carefully reviewing the state court record and the arguments of the parties, this Court will deny the Petition on the merits with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

A.  <u>The Crimes</u>

Dawshon challenges a sentence of life imprisonment plus 100 years, with a 60-year period of parole ineligibility, imposed after a jury convicted him of being a kingpin of a drug trafficking network which operated throughout New Jersey, conspiracy to distribute heroin and cocaine, employment of a juvenile in a drug distribution scheme, operating a drug

---

[2] Dawshon Fitzgerald was tried with his brothers, Dawud Fitzgerald and Dawmeen Fitzgerald, and their uncle, John Fitzgerald.  Dawshon, Dawud and Dawmeen were found guilty on all 21 counts in the indictment, and John was found guilty on some counts.  <u>See</u> <u>State v. Fitzgerald</u>, 2008 WL 2572617 (N.J. Super. Ct., App. Div., June 30, 2008), <u>certif. denied</u>, 196 N.J. 597 (2008).

production facility, and other charges.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  As Dawshon has not rebutted the factual findings of the New Jersey courts, this Court will rely on those findings.

The Appellate Division found that for several years the Fitzgeralds "were trafficking cocaine and heroin throughout New Jersey" and that they employed several persons "who were involved in selling, transporting, and packaging the narcotics." State v. Fitzgerald, 2012 WL 469779 (N.J. Super. Ct., App. Div., Feb. 15, 2012), certif. denied, 212 N.J. 460 (2012).  Dawshon was in charge of the heroin, Dawmeen was responsible for the cocaine, and Dawud was the person who ensured that operations ran smoothly.  The Fitzgerald organization used an apartment in Newark as a lab for cutting and packaging the drugs and an apartment in Elizabeth for sales.  After obtaining warrants, members of the Union County Prosecutor's Office Narcotics Strike Force monitored intercepted telephone calls within the organization between November 19, 2002, and December 17, 2002. On December 17, 2002, at 6:00 a.m., officers on the strike force

simultaneously executed nine search warrants at the various premises in Elizabeth, Newark and Roselle, and arrested Dawshon, Dawud, and Dawmeen.  The evidence presented at trial consisted primarily of the testimony of two members of the organization, i.e., Angel Aviles and Sherrodd Britt, who had entered into plea agreements;[3] 128 intercepted telephone conversations between the Fitzgeralds and members of the organization; and evidence, including drugs, guns, and money, seized during the execution of the search warrants.

B.    The State Court Proceedings

The Fitzgeralds were tried before a jury from February 24, 2005, through March 15, 2005.  Dawshon, Dawud and Dawmeen were found guilty on all 21 counts in the indictment; John was found guilty on some counts.  After granting the State's motion for imposition of an extended sentence on each Fitzgerald brother, the trial judge sentenced each to an aggregate term of life in prison, plus 100 years, with a 65-year period of parole ineligibility.  Each brother appealed.  On June 30, 2008, in a

---

[3] Aviles and Britt sold drugs out of the Elizabeth apartment, which was open each day from 5:30 a.m. until 10:00 p.m., and had 500 to 600 customers a day.

4

single opinion, the Appellate Division affirmed their convictions and remanded for resentencing.  See State v. Fitzgerald, 2008 WL 2572617 (N.J. Super. Ct., App. Div., June 30, 2008).  On October 6, 2008, the New Jersey Supreme Court denied petitions for certification.  See State v. Fitzgerald, 196 N.J. 597 (2008) (table).  On November 25, 2008, the trial judge resentenced Dawud and Dawmeen to aggregate sentences of life plus 100 years, with a 65-year period of parole ineligibility (the same as the original sentence), and resentenced Dawshon to the same aggregate sentence, except the period of parole ineligibility was reduced to 60 years.

On January 14, 2009, Dawshon and Dawud filed separate petitions for post-conviction relief in the trial court.  On November 30, 2009, the trial court entered orders denying each petition.  Dawud and Dawshon appealed, and on February 15, 2012, the Appellate Division affirmed in a single opinion.  See State v. Fitzgerald, 2012 WL 469779 (N.J. Super. Ct., App. Div., Feb. 15, 2012).  The New Jersey Supreme Court denied certification on November 9, 2012.  See State v. Fitzgerald, 212 N.J. 459 (2012) (table); State v. Fitzgerald, 212 N.J. 460 (2012) (table).

C.  Procedural History of § 2254 Petition

On February 13, 2013, Dawshon signed his Petition for a
Writ of Habeas Corpus and handed it to prison officials for
mailing to the Clerk.  (ECF No. 1 at 17.)  The Court notified
him of his right to amend the petition to include all available
federal claims in accordance with Mason v. Meyers, 208 F.3d 414
(3d Cir. 2000), and, in response, he indicated by letter dated
April 18, 2013, that he wanted to withdraw the pending petition
and file one all-inclusive petition.  (ECF No. 4.)  The Court
dismissed the petition without prejudice to the filing of the
all-inclusive petition.  (ECF No. 5.)

On May 20, 2013, Dawshon handed his all-inclusive Petition,
which is presently before this Court, to prison officials for
mailing to the Clerk.  (ECF No. 7 at 18.)  That Petition raises
the following grounds:

> Ground One:  THE PETITIONER WAS DENIED HIS SIXTH
> AMENDMENT CONSTITUTIONAL RIGHT TO THE EFFECTIVE
> ASSISTANCE OF TRIAL COUNSEL BY COUNSEL'S FAILURE TO:
> (A) SUBJECT THE STATE'S CASE TO AN ADVERSARIAL TESTING
> DURING THE PRETRIAL SUPPRESSION HEARING TO CHALLENGE
> THE ADMISSIBILITY OF EVIDENCE OBTAINED PURSUANT TO
> WIRETAP WARRANTS AND NO-KNOCK SEARCH WARRANTS; (B) TO
> OBJECT TO THE STATE'S ADMISSION OF NUMEROUS HEARSAY
> WIRETAP TAPES AND TESTIMONY; (C) TO OBJECT TO
> PROSECUTORIAL MISCONDUCT OF THE STATE'S RELIANCE ON AN
> UNTESTED INFORMANT; AND (D) FAILING TO OBJECT TO

6

ERRONEOUS JURY INSTRUCTIONS[.]  THEREFORE, THE
CONVICTIONS SHOULD BE REVERSED.

Ground Two:  THE TRIAL COURT'S CHARGE TO THE JURY
REGARDING ACCOMPLICE LIABILITY WAS INADEQUATE,
INSUFFICIENT, AND FATALLY DEFECTIVE IN NATURE.

Ground Three:  THE TRIAL COURT ERRED BY FAILING TO
ADEQUATELY INSTRUCT THE JURY REGARDING COUNT III,
CHARGING EMPLOYING A JUVENILE IN A DRUG DISTRIBUTION
SCHEME.

Ground Four:  THE JUDGE REPEATEDLY MISINFORMED THE
JURORS THAT THEIR ROLE WAS TO DETERMINE THE "GUILT OR
INNOCENCE" OF DEFENDANT, THEREBY REDUCING THE STATE'S
BURDEN IN PROVING DEFENDANT'S GUILT BEYOND A
REASONABLE DOUBT.

(ECF No 7 at 7, 11, 13, 14.)

The State filed an Answer arguing that none of the four
grounds raised in the Petition satisfies the standard for
granting habeas relief under 28 U.S.C. § 2254(d).  (ECF No. 17.)
Dawshon filed a Reply arguing that he is entitled to habeas
relief under § 2254(d)(1) because counsel was constitutionally
ineffective.

## II.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets
limits on the power of a federal court to grant a habeas
petition to a state prisoner.  See Cullen v. Pinholster, 131
S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to

entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court adjudicated petitioner's federal claim on the merits,[4] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 135 S.Ct. 1372, 1376 (2015). The

---

[4] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

petitioner carries the burden of proof, and review under §
2254(d) is limited to the record that was before the state court
that adjudicated the claim on the merits.  See Pinholster, 131
S.Ct. at 1398.

A court begins the analysis under § 2254(d)(1) by
determining the relevant law clearly established by the Supreme
Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).
"[C]learly established law for purposes of § 2254(d)(1) includes
only the holdings, as opposed to the dicta, of t[he Supreme
Court's] decisions," as of the time of the relevant state-court
decision.  Woods, 135 S.Ct. at 1376 (quoting White v. Woodall,
134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S.
362, 412 (2000)).  A decision is "contrary to" a Supreme Court
holding within 28 U.S.C. § 2254(d)(1) if the state court
"contradicts the governing law set forth in [the Supreme
Court's] cases" or if it "confronts a set of facts that are
materially indistinguishable from a decision of th[e Supreme]
Court and nevertheless arrives at a [different] result."
Williams, 529 U.S. at 405-06.  Under the "'unreasonable
application' clause of § 2254(d)(1), a federal habeas court may
grant the writ if the state court identifies the correct

9

governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2) on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

### III.  DISCUSSION

A.  Ineffective Assistance of Counsel (Ground One)

In Ground One, Dawshon asserts that trial counsel was constitutionally ineffective in (1) failing at the suppression hearing to adequately challenge the admissibility of evidence

10

obtained pursuant to wiretap warrants and no-knock search
warrants; (2) failing to object to hearsay in the wiretapped
recordings and testimony; (3) failing to object to the State's
reliance on an untested informant; and (4) failing to object to
erroneous jury instructions.  (ECF No. 7 at 7.)

The Sixth Amendment guarantees the accused the "right . . .
to have the Assistance of Counsel for his defense."  U.S. Const.
amend. VI.  A claim that counsel's assistance was so defective
as to require reversal of a conviction has two components, both
of which must be satisfied.  See Strickland v. Washington, 466
U.S. 668, 687 (1984).  First, the defendant must "show that
counsel's representation fell below an objective standard of
reasonableness."  Id. at 687-88.  To meet this prong, a
"convicted defendant making a claim of ineffective assistance
must identify the acts or omissions of counsel that are alleged
not to have been the result of reasonable professional
judgment."  Id. at 690.  The court must then determine whether,
in light of all the circumstances at the time, the identified
errors fell "below an objective standard of reasonableness[.]"
Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam).  To
establish prejudice, the defendant must show that "there is a

reasonable probability that the result of the trial would have been different absent the deficient act or omission." Id., 134 S.Ct. at 1083.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 1089 (quoting Strickland, 466

(1) Defective Performance at Suppression Hearing

In Ground One (A), Dawshon asserts that counsel was ineffective in failing to "subject the State's case to an adversarial testing during the pretrial suppression hearing to challenge the admissibility of evidence obtained pursuant to wiretap warrants and no-knock search warrants." (ECF No. 7 at 7.)  As factual support, Dawshon relies on his brief filed on appeal from the order denying post-conviction relief wherein he argued that counsel should have challenged the qualifications of the police officers who sought the wiretap as well as the finding of probable cause for issuance of the wiretap.  The Appellate Division found that Dawshon filed a motion to suppress the wiretap warrants for failure to satisfy New Jersey law and the Constitution.  The Appellate Division found that counsel was not ineffective during the motion to suppress because there was

12

probable cause for issuance of the warrants and the "statements in the affidavits were supported by sufficient factual underpinnings to justify issuance of the wiretap orders." State v. Fitzgerald, 2012 WL 469779 at *22.

This Court must presume the correctness of the finding that the affidavits supporting the warrant applications were factually supported, as Dawshon has not rebutted them by clear and convincing evidence. Given this finding, the Appellate Division was not unreasonable in its application of Strickland when it concluded that counsel was not constitutionally deficient in the motion to suppress the wiretap and no-knock warrants.

(2) Failure to Object to Admission of Hearsay

Dawshon argues in Ground One (B) that counsel was deficient in failing to object to the admission of unspecified hearsay in the wiretaps and testimony. Although Dawshon raised this claim on appeal from the denial of post-conviction relief, his appellate brief did not identify the hearsay and simply referred to the pro se supplemental brief he filed in the Law Division. In his pro se supplemental brief, Dawshon argued generally that counsel failed to object when Aviles and Britt testified with

13

respect to recorded conversations to which Dawshon was not a party. (ECF No. 17-7 at 90-91.) The Appellate Division rejected this ground without discussion.

The Court notes that Dawshon has not identified in his § 2254 Petition or his state briefs the hearsay which he claims his attorney should have objected to. Dawshon has not shown that the Appellate Division unreasonably applied <u>Strickland</u> when it rejected this unsupported claim.

(3) Failure to Object to State's Reliance on an Untested Informant

In Ground One (C) Dawshon asserts that counsel was deficient in failing to object to Detective Sherrod's reliance on an untested informant in his affidavit seeking the warrants. Dawshon raised this claim on appeal from the denial of post-conviction relief by referring to the pro se supplemental brief he filed in the Law Division. In that brief, Dawshon argued that in his affidavit "Detective Sheridan knowingly misrepresented the credibility of Informant B, by averring to the reliability and past use of this informant, when the informant had actually never been previously used or tested." (ECF No. 17-7 at 93.) The Appellate Division found that counsel was not deficient in failing to file a motion to suppress on the

14

basis of this alleged misrepresentation because the motion would

have failed.  Specifically, the Appellate Division found:

> Here, Detective Sheridan, who signed the affidavit of
> probable cause in support of the wiretap warrant,
> based his request on, among other things, what Dawshon
> characterizes as "[i]nformation received from an
> untested informant, hereinafter referred to as
> Informant B . . ."  The information provided by
> Informant B was corroborated by the plethora of other
> evidence cited in Detective Sheridan's affidavit,
> including multiple controlled drug purchases,
> witnessed narcotics activity and the defendants'
> extensive criminal records. This evidence was obtained
> from numerous sources, including Detective Sheridan,
> other Elizabeth police officers, a reliable
> confidential informant (Informant A), police
> department records, and telephone records.
>
> Dawshon has failed to show that, viewed within the
> totality of the circumstances, a challenge to the
> wiretap search warrant would have been meritorious.

State v. Fitzgerald, 2012 WL 469779 at *17-*18.

Again, this Court is required to presume the correctness of

the finding that the information provided by Informant B was

corroborated, as Dawshon has not rebutted this finding by clear

and convincing evidence.  The Appellate Division did not

unreasonably apply Strickland when it rejected Dawshon's claim

that counsel was deficient in failing to challenge the issuance

of the warrants based on the unreliability of informant B.

(4) Failure to Object to Erroneous Jury Instructions

15

In Ground One (D), Dawshon argues that counsel was deficient in failing to object to erroneous jury instructions. He relies on his state court briefs.  On appeal from the order denying post-conviction relief, Dawshon argued that counsel was ineffective for failing to challenge the erroneous instructions on accomplice liability and conspiracy.  The Appellate Division found that counsel was not deficient in failing to challenge the accomplice liability instruction because, "while a portion of the Model Charge was omitted, that portion generally repeated the charge the jury received [and], although the court does not appear to have specifically charged the jury that it had to consider accomplice liability separately for each defendant, the charge given implies that such consideration should have occurred." Fitzgerald, 2012 WL 469779 at *18.  The Appellate Division also found that counsel was not deficient in failing to challenge the vicarious liability and conspiracy instructions, as these instructions were not erroneous:  "Given the facts of the case, that Dawshon was alleged to have operated a drug trafficking network with multiple 'employees,' charging the jury on both conspiracy and conspiracy based on vicarious liability was appropriate." Id.

16

Because "counsel cannot be deemed ineffective for failing to raise a meritless claim," the New Jersey court was not unreasonable in its application of Strickland when it concluded that counsel was not deficient in failing to challenge the accomplice liability and conspiracy instructions.  Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (quoting Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000)).

B.    Due Process:  Instructions (Grounds Two, Three, Four)

Relying on the brief he filed on direct appeal, in Grounds Two, Three and Four, Dawshon challenges the adequacy of various instructions.  In Ground Two, Dawshon challenges the accomplice liability instruction as inadequate, insufficient, and fatally defective because:  it failed to tell the jury that defendant "had to act with the purpose of promoting or facilitating the commission of the substantive crime with which he was charged;" it failed to instruct that knowledge that a person would be committing the crime in question was insufficient because the state had "to prove it was his conscious object that the specific conduct in question be committed;" it "omitted the balance of the applicable model jury charge summarizing the four

17

requisite elements which the State had to demonstrate beyond a reasonable doubt before the jury could find the defendant criminally culpable as a[n] accomplice;" and "it did not remind the jury to consider the accomplice status of any defendant separately as to each of the various charges." (ECF No. 17-2 at 34.)  In Ground Three Dawshon argues that the instruction for employment of a juvenile in a drug distribution scheme was inadequate because the instruction omitted that portion of the model jury charge requiring the State "to prove beyond a reasonable doubt [that] the defendant controlled the juvenile in question, rather than merely being involved in some fashion with a drug transaction involving the juvenile." (ECF No. 17-2 at 40.)  In Ground Four Dawshon asserts that that he was denied due process because "the court told the jury that the defendant was in court for resolution of his 'guilt or innocence' (18T 10-9 to 16) and then reminded the jury six more times that it was to consider defendant's 'guilt or innocence.'" (ECF No. 17-2 at 41.)

In Waddington v. Sarausad, 555 U.S. 179 (2009), a habeas case, the Supreme Court emphasized the established principle that an ambiguity, inconsistency, or error in a state

18

instruction does not violate due process unless the defendant also shows that "there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Id. at 191 (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). "In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. (quoting Estelle, 502 U.S. at 72).

In this case, Dawshon presented Grounds Two, Three and Four to the Appellate Division on direct appeal. He also raised them to a certain extent as ineffective assistance of counsel grounds on appeal from the denial of post-conviction relief. As explained above, the Appellate Division determined that counsel was not deficient in failing to object to the jury instructions because the instructions were not improper or erroneous. In any event, even if the instructions regarding accomplice liability and employment of a juvenile may have been ambiguous, erroneous, or confusing, Dawshon has not shown that the jury applied the instructions in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.

19

See Waddington, 555 U.S. at 191; Estelle, 502 U.S. at 72.
Accordingly, he is not entitled to habeas relief on Grounds Two
or Three.  See Williams v. Beard, 637 F. 3d 195, 223-25 (3d Cir.
2011) (rejecting § 2254 claim that the instruction
unconstitutionally broadened the scope of accomplice liability
because petitioner failed to show that there was a reasonable
likelihood that the jury applied the instruction in a manner
that relieved the state of its burden of proving every element
beyond a reasonable doubt); Johnson v. Rosemeyer, 117 F.3d 104,
110 (3d Cir. 1997) ("[T]he jury instructions on justification .
. . would need to have relieved the state of the necessity of
proving an element of the offense as required by federal law or
to have deprived the petitioner of a defense the state had to
afford him under federal law in order to be significant in a
federal habeas corpus action.")

    In contrast, Dawshon argues in Ground Four that "the trial
court numerous times misinformed the jurors that their role was
to determine the 'guilt or innocence' of defendant, thereby
denying defendant due process of law and a fair trial under both
the United States and the New Jersey Constitutions."  (ECF No.
17-2 at 41.)  Dawshon acknowledges that the trial court "gave a

20

standard instruction on reasonable doubt," but he argues that
this instruction "did not dispel the grossly erroneous
instructions that the jurors were obliged to determine
defendant's guilt or innocence."  Id. at 42.

The record shows that the trial court issued the following
instructions at the close of the evidence with respect to the
burden of proof:

> [E]ach defendant sits in this courtroom assumed to be
> innocent, unless and until you find the State has
> proven them guilty of, at least, one of these crimes
> and all of their elements beyond a reasonable doubt.
> The burden of proof is on the State and it never
> shifts.  There is no burden with respect to proof
> imposed upon the defendant.  No defendant is obliged
> to prove that he's innocent.  He sits in this
> courtroom assumed to be innocent.

(ECF No. 18-15 at 10-11.)

The trial court further instructed the jurors to determine
"not only whether the State has proved each and every element of
the offense charged beyond a reasonable doubt, but also whether
the State has proven beyond a reasonable doubt that the
defendant is the person who committed the crime."  Id. at 14.

Dawshon has not cited any Supreme Court case holding that,
where a court has properly instructed a jury on the beyond-a-
reasonable-doubt standard, a court's comments during trial that

21

the role of the jury is to determine a defendant's "guilt or
innocence" violates due process.  Moreover, the Supreme Court
has itself frequently stated that "the central purpose of a
criminal trial is to decide the factual question of the
defendant's guilt or innocence[.]").  Delaware v. Van Arsdall,
475 U.S. 673, 681 (1986).  See, e.g., United States v. Gaudin,
515 U.S. 506, 514 (1995) ("[T]he jury's constitutional
responsibility is not merely to determine the facts, but to
apply the law to those facts and draw the ultimate conclusion of
guilt or innocence."); Taylor v. Kentucky, 436 U.S. 478, 485
(1978) ("This Court has declared that one accused of a crime is
entitled to have his guilt or innocence determined solely on the
basis of the evidence introduced at trial"); Stone v. Powell,
428 U.S. 465, 489-90 (1976) ("The costs off applying the
exclusionary rule even at trial and on direct review are well
known:  the focus of the trial, and the attention of the
participants therein, are diverted from the ultimate question of
guilt or innocence that should be the central concern in a
criminal proceeding.") (footnotes omitted); Williams v. Florida,
399 U.S. 78, 82 (1970) ("We find ample room in [our adversary]
system, at least as far as 'due process' is concerned, for the

22

instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence."). Accordingly, the New Jersey courts did not unreasonably apply clearly established Supreme Court precedent when they concluded that the trial court's isolated references to "guilt or innocence" did not violate due process.  Dawshon is not entitled to habeas relief on Ground Four.

## IV.  Certificate of Appealability

Dawshon has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V.  CONCLUSION

This Court denies the Petition with prejudice and denies a certificate of appealability.


s/ Jerome B. Simandle
JEROME B. SIMANDLE
Chief U.S. District Judge

Dated:  **March 9, 2016**

23